# EXHIBIT A

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| CHELSEY BOURNEUF, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| W.B., by and through his mother and | ) | |
| Next Friend, Chelsey Bourneuf, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| THE J.M. SMUCKER COMPANY, | ) | |
| Serve: | ) | JURY TRIAL DEMANDED |
| CT Corporation System | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COSENTINO GROUP, INC. | ) | |
| Serve: | ) | |
| National Registered Agents, Inc. | ) | |
| 120 South Central Avenue | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| Defendants. | ) | |

**PETITION FOR DAMAGES**

Plaintiffs, by and through their undersigned counsel, state and allege the following for their

Petition for Damages against Defendants.

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Chelsey Bourneuf is an individual over the age of 18 who resides in

Mission, Kansas.

2. Plaintiff W.B. is the minor son of Plaintiff Chelsey Bourneuf, and he brings this

action through his natural mother and Next Friend, Chelsey Bourneuf.

3.      Defendant Cosentino Group, Inc. is a corporation organized under the laws of the State of Missouri, is duly authorized to do business in the State of Missouri, and its principal place of business is located at 13180 Metcalf Avenue, Overland Park, Kansas 66213.

4.      At all relevant times, Defendant Cosentino Group, Inc. owned and operated and conducted business at the Cosentino's Price Chopper store located at 2219 North Belt Highway, St. Joseph, Missouri 64506 (the "**St. Joseph Price Chopper**").

5.      Defendant Cosentino Group, Inc., may be served with process upon its registered agent: National Registered Agents, Inc, 120 South Central Avenue, Clayton, MO 63105.

6.      Defendant The J.M. Smucker Company is an Ohio Corporation with its principal place of business in Orrville, Ohio.  It may be served with process upon its registered agent: CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

7.      This Court has subject matter jurisdiction over this action pursuant to Mo. Const. art. V, § 14.

8.      This Court has personal jurisdiction over Defendant The J.M. Smucker Company pursuant to RSMo. § 506.500 because Plaintiffs' causes of action against it arises from its transaction of business in this state and its commission of tortious acts within this state.  Defendant The J.M. Smucker Company does systematic and continuous business in the State of Missouri, enters into contracts in the State of Missouri, advertises products in the State of Missouri, markets and delivers its products, including the subject peanut butter, into the stream of commerce with the expectation that its peanut butter will be sold in the State of Missouri, and it derives a substantial portion of its revenues from activities in the State of Missouri.  Defendant The J.M. Smucker Company has substantial, systematic and continuous contact with the State of Missouri such that the exercise of personal jurisdiction is fair and appropriate and does not offend traditional

notions of fair play and substantial justice.

9. This Court has personal jurisdiction over Defendant Cosentino Group, Inc., as it is a Missouri corporation and thus a citizen of the State of Missouri and was and is at all times material and relevant herein doing business in the state of Missouri. Moreover, Plaintiffs' claims against Defendant Cosentino Group, Inc. arise from its transaction of business within this state and its commission of tortious acts within the state.

10. Venue is proper in this Court pursuant to RSMo. § 508.010.4 because Plaintiff W.B. was first injured in Jackson County, Missouri.

## INTRODUCTION

11. This lawsuit arises out of Defendant The J.M. Smucker Company's unlawful and unreasonable conduct directly causing a Salmonella outbreak impacting thousands of U.S. consumers, including the Plaintiffs, who purchased and/or consumed certain lots of Jif peanut butter.

12. On May 20, 2022, Defendant The J.M. Smucker Company announced that it was "recalling select Jif® peanut butter products sold in the U.S. due to potential salmonella contamination."

13. The recalled peanut butter was distributed nationwide in retail stores and other outlets, including the St. Joseph Price Chopper, and included the lot codes 1274425-2140425.

14. On May 20, 2022, the Food and Drug Administration ("**FDA**") published "Outbreak Investigation of Salmonella: Peanut Butter (May 2022)", which notified the public of its investigation in conjunction with the U.S. Centers for Disease Control and Prevention ("**CDC**") and local partners into a "multistate outbreak of Salmonella Senftenberg infections linked to certain Jif brand peanut butter products produced at the J.M. Smucker Company facility in

3

Lexington, Kentucky."

15.    According to the CDC, as of May 25, 2022, there were 16 reported cases of Salmonella connected to Defendant's Jif—100% of the people who were interviewed reported eating peanut butter prior to becoming ill, and 90% of those interviewed reported which brand peanut butter and all of them identified Jif. As a result, "Epidemiological evidence indicates that Jif brand peanut butter produced the strain causing illnesses" in the outbreak.

16.    The FDA advised purchasers of the contaminated peanut butter not to eat it.

17.    According to the CDC, Salmonella are a group of bacteria that can cause a gastrointestinal illness and fever called salmonellosis. Salmonella can be spread by food handlers who do not wash their hands and/or the surfaces and tools they use between food preparation steps, and when people eat raw or undercooked foods. Salmonella can also spread from animals to people. People who have direct contact with certain animals, including poultry and reptiles, can spread the bacteria from the animals to food if they do not practice proper hand washing hygiene before handling food. Pets can also spread the bacteria within the home environment if they eat food contaminated with Salmonella.

18.    Most people infected with Salmonella will begin to develop diarrhea, fever, and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the mine or stool, and in some cases may become fatal. The CDC estimates that approximately 450 persons in the United States die each year from acute Salmonellosis.

19.    Due to the range in severity of illness, people should consult their healthcare provider if they suspect that they have developed symptoms that resemble a Salmonella infection. Most people who get ill from Salmonella have diarrhea, fever, and stomach cramps. Most people

4

recover without specific treatment and should not take antibiotics. Antibiotics are typically used only to treat people who have severe illness or who are at risk for it. Some people's illness may be so severe that they need to be hospitalized.

20. Prior to the recall, on April 20, 2022, Plaintiff Chelsey Bourneuf's mother purchased Jif brand peanut butter with Lot No. 2004425 (the "**Contaminated Peanut Butter**") from the St. Joseph Price Chopper.

21. Prior to the recall, on May 18-19, 2022, Plaintiff Chelsey Bourneuf consumed the Contaminated Peanut Butter.

22. When Plaintiff Chelsey Bourneuf consumed the Peanut Butter, she was approximately 32 weeks pregnant.

23. After consuming the Contaminated Peanut Butter, Plaintiff Chelsey Bourneuf became violently ill and was subsequently hospitalized on May 20, 2022, at St. Luke's Hospital in Kansas City, Missouri.

24. Plaintiff Chelsey Bourneuf was discharged from St. Luke's Hospital, but she was readmitted on May 23, 2022, due to concerns regarding the premature delivery of Plaintiff W.B.

25. Plaintiff Chelsey Bourneuf's illness caused her to go into preterm labor.

26. Plaintiff Chelsey Bourneuf remained admitted to St. Luke's Hospital, and as a result of Plaintiff Chelsey Bourneuf's preterm labor, Plaintiff W.B. was born prematurely at St. Luke's Hospital in Kansas City, Jackson County, Missouri, on May 26, 2022.

27. Plaintiff W.B. was admitted to the Neonatal Intensive Care Unit at St. Luke's Hospital in Kansas City, Missouri, and he remained hospitalized until he was discharged on June 10, 2022.

28. Plaintiff W.B. was born prematurely and sustained severe, permanent and disabling

injuries and development delays, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

29. Defendants' violations of laws and regulations prohibiting the sale of contaminated and misbranded food, deviations from reasonable manufacturing and production standard practices, and failures to ensure the quality and safety of the Contaminated Peanut Butter prior to sale directly caused Plaintiffs' economic and noneconomic losses.

30. Accordingly, Plaintiffs bring this lawsuit for out-of-pocket losses, compensation, personal injuries, medical and healthcare bills, emotional distress, pain and suffering, and all other relief to which they are lawfully entitled, resulting from Defendants' sale of the Contaminated Peanut Butter.

**Defendant The J.M. Smucker Company's Jif Peanut Butter**

31. Defendant The J.M. Smucker Company's manufactures, distributes, advertises, markets, and sells Jif peanut butter.

32. The Contaminated Peanut Butter reportedly originated from Defendant's The J.M. Smucker Company's Lexington, Kentucky facility, and was distributed to the St. Joseph Price Chopper. The Contaminated Peanut Butter had lot number 250213 was included in the contaminated lot codes 1274425-2140425. Lot codes are included alongside the "best-if-used-by" date on the product.

33. Defendant The J.M. Smucker Company directs, controls, and participates in the manufacturing and packaging of the Contaminated Peanut Butter and the peanut butter ingredients in it. As part of that direction, control, and participation, Defendant The J.M. Smucker Company determines and is responsible for setting manufacturing and quality standards, proper hygiene of

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM

employees, maintaining clean facilities through reasonable and necessary health and safety measures, and ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

34.    Defendant The J.M. Smucker Company violated state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods and it failed to exercise reasonable care in setting manufacturing and quality standards, ensuring proper hygiene of employees and equipment, maintaining clean facilities through reasonable and necessary health and safety measures, and ensuring that the products manufactured and sold to consumers comply with federal, state, and local laws and regulations.

35.    Defendant The J.M. Smucker Company designed, inspected, tested, manufactured, assembled, marketed, distributed, advertised and sold the Contaminated Peanut Butter.

36.    The Contaminated Peanut Butter was sold by Defendant Cosentino Group, Inc. at St. Joseph Price Chopper located in St. Joseph, Missouri.

37.    At the time the Contaminated Peanut Butter left the hands of Defendant The J.M. Smucker Company, it had:

    a.  One or more manufacturing defects, including that it was contaminated with Salmonella;

    b.  One or more marketing defects in that Defendant The J.M. Smucker Company failed to provide to the ultimate user or consumer of the Contaminated Peanut Butter adequate and proper warnings and instructions respecting the dangers of Salmonella contamination and precautions to be taken to illness and/or death resulting from the ingestion of the Contaminated Peanut Butter.

38.    Defendant The J.M. Smucker Company was negligent in the design, manufacture,

7

sale and failure to warn the public about dangers relating to ingestion of the Contaminated Peanut Butter, which negligence, was a proximate cause of the events giving rise to Plaintiffs' injuries and premature birth and delivery.

39.     The Contaminated Peanut Butter was sold by Defendant Cosentino Group, Inc. at St. Joseph Price Chopper located in St. Joseph, Missouri.

40.     At the time the Contaminated Peanut Butter left the hands of Defendant The J.M. Smucker Company, the Contaminated Peanut Butter was defective and unreasonably dangerous. Defendant Cosentino Group, Inc. is strictly liable in tort for any and all defective conditions of the Contaminated Peanut Butter as a seller of the defective produce.

<u>**COUNT I – BREACH OF IMPLIED WARRANTY OF FITNESS  FOR A PARTICLAR PURPOSE UNDER THE U.C.C.**</u>
**ALL DEFENDANTS**

41.     Plaintiffs hereby incorporate all paragraphs of this Petition as if each were fully stated in this Count.

42.     Defendants sold the Contaminated Peanut Butter and Plaintiff's mother purchased it in the normal course of business.

43.     Defendants knew or should have known of the use for which the Contaminated Peanut Butter was purchased, which was for consumption by consumers.

44.     Plaintiff Chelsey Bourneuf reasonably relied upon Defendants' judgment that the Contaminated Peanut Butter was fit for consumption.

45.     Plaintiff Chelsey Bourneuf used the Contaminated Peanut Butter for its intended purpose and under foreseeable conditions.

46.     When sold by Defendants, the Contaminated Peanut Butter was not fit for consumption.

8

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM

47. As a direct result of the Contaminated Peanut Butter being unfit to eat under ordinary, foreseeable conditions, Plaintiff Chelsey Bourneuf sustained severe, permanent and disabling injuries, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

48. As a direct result of the Contaminated Peanut Butter being unfit to eat under ordinary, foreseeable conditions, Plaintiff W.B. was born prematurely and sustained severe, permanent and disabling injuries and development delays, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

## COUNT II – STRICT LIABILITY – PRODUCT DEFECT
### ALL DEFENDANTS

49. Plaintiffs hereby incorporate all paragraphs of this Petition as if each were fully stated in this Count.

50. Each Defendant sold the Contaminated Peanut Butter in the course of its business.

51. The Contaminated Peanut Butter was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use due to the Salmonella contamination.

52. The Contaminated Peanut Butter was used in a manner reasonably anticipated in that it was ingested.

53. As a direct result of the defective condition that existed when Contaminated Peanut Butter was sold, Plaintiff Chelsey Bourneuf sustained severe, permanent and disabling injuries, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

54. As a direct result of the defective condition that existed when Contaminated Peanut Butter was sold, Plaintiff W.B. was born prematurely and sustained severe, permanent and

9

disabling injuries and development delays, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

<u>**COUNT II – STRICT LIABILITY – FAILURE TO WARN**</u>
**DEFENDANT THE J.M. SMUCKER COMPANY**

55. Plaintiffs hereby incorporate all paragraphs of this Petition as if each were fully stated in this Count.

56. Defendant The J.M. Smucker Company sold the Contaminated Peanut Butter in the regular course of business.

57. At the time it was sold by Defendant The J.M. Smucker Comp, the Contaminated Peanut Butter was then in a defective condition unreasonably dangerous when put to its reasonably anticipated use without knowledge that the Contaminated Peanut Butter was contaminated with Salmonella.

58. Defendant The J.M. Smucker Company did not give adequate warnings of the hazards and dangers it created by the aforesaid defect.

59. Plaintiff Chelsey Bourneuf was without knowledge of the aforesaid defects, which said defects rendered the Contaminated Peanut Butter unreasonably dangerous when used in a manner reasonably anticipated.

60. The Contaminated Peanut Butter was being used in a manner reasonably anticipated on May 18-19, 2022, when Plaintiff Chelsey Bourneuf ingested it.

61. As a direct result of the Contaminated Peanut Butter being sold without adequate warnings, Plaintiff Chelsey Bourneuf sustained severe, permanent and disabling injuries, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM

62. As a direct result of the Contaminated Peanut Butter being sold without adequate warnings, Plaintiff W.B. was born prematurely and sustained severe, permanent and disabling injuries and development delays, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

**COUNT IV – NEGLIGENT MANUFACTURING**
**DEFENDANT THE J.M. SMUCKER COMPANY**

63. Plaintiffs hereby incorporate all paragraphs of this Petition as if each were fully stated in this Count.

64. Defendant The J.M. Smucker Company manufactured the Contaminated Peanut Butter.

65. The Contaminated Peanut Butter was contaminated with Salmonella.

66. Defendant The J.M. Smucker Company failed to use ordinary care when manufacturing the Contaminated Peanut Butter to make it reasonably safe for consumption and free from contamination with Salmonella.

67. As a direct result of such failure, Plaintiff Chelsey Bourneuf sustained severe, permanent and disabling injuries, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

68. As a direct result of such failure, Plaintiff W.B. was born prematurely and sustained severe, permanent and disabling injuries and development delays, including but not limited to past and future pain, suffering, mental anguish, and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses.

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants for a

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM

reasonable sum of damages in excess of $25,000.00 as will fairly and justly compensate each of them for their damages, their costs incurred herein, and for such other and further relief as the Court may deem just and proper under the circumstances.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

**BRADLEY and BRADLEY, L.L.C.**

By: */s/ Douglas R. Bradley*
Douglas R. Bradley    MO#58754
800 W. 47th Street, Suite 705
Kansas City, MO 64112
Telephone: 816-527-9000
Fax No.: 844-539-0091
E-mail:  Doug@bradleyattorneys.com

and

**HOUSE LAW LLC**

*/s/ Aaron M. House*
Aaron M. House,    MO 57723
800 West 47th Street, Suite 705
Kansas City, MO 64112
Telephone: 816-875-4260
Facsimile: 855-717-5816
aaron@houselawkc.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - JACKSON - INDEPENDENCE - May 16, 2024 - 02:12 PM